UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LURADINE TIMBERLAKE,

                              Plaintiff                COMPLAINT
                                                                        JURY TRIAL DEMANDED

  -Against-


NEW YORK PRESBYTERIAN HOSPITAL,

                              Defendants
------------------------------------------------------------X

       Plaintiff, LURADINE TIMBERLAKE, by her attorneys, LAW OFFICES OF AMBROSE WOTORSON, alleges as follows:

    I.       INTRODUCTION

    1.      This is an action pursuant to 29 U.S.C. Section 621, *et seq.*, and 42 U.S.C. Sections 1981 and 2000(e) to vindicate the civil rights of plaintiff. Plaintiff contends that defendants discriminatorily altered the terms, conditions, and privileges of her employment on account of her race and age, because she reasonably opposed said discriminatory behavior, and because she decried defendant's departures from the standard duty of medical care owed to its own patients. Indeed, when plaintiff reasonably sought to assemble documentary and recorded anecdotal evidence to combat defendants' behavior and to underscore defendant's departures from the standard duty of medical care owed to its own patients, she was summarily terminated without any notice or opportunity to be heard, in contravention of defendants' own policies.

    II.      JURISDICTION

    2.      This Court has jurisdiction over this action under to 29 U.S.C. Section 621, *et seq.*, and 42 U.S.C. Sections 1981 and 2000(e). Moreover, plaintiff filed the instant complaint

1

within 90 days after her receipt of a right to sue letter from the United States Equal Employment Opportunity Commission. Venue is proper, as the operative events occurred within this judicial district.

    III.    PARTIES

    3.    LURADINE TIMBERLAKE (hereinafter, "plaintiff") who resides in Queens County, New York, hereby sues on her own behalf, and at all relevant times, she was employed with the defendant.

    4.    NEW YORK PRESBYTERIAN HOSPITAL, (hereinafter, "defendant") is a private medical facility. At all relevant times, it employed plaintiff as a staff nurse. Defendant's principal place of business is located at 525 East 68th Street, New York, New York 10021.

    IV.    FACTUAL AVERMENTS

    5.    However, the terms, conditions, and privileges of plaintiff's employment have been adversely affected on account of her race and age and her opposition to such discrimination, in the following ways:

    a.    Plaintiff was born on June 26, 1949.

    b.    Plaintiff was hired as a registered nurse with New York Presbyterian Hospital in 1972, and she has worked for defendant for almost thirty-two years until her retaliatory and discriminatory termination on Match 26, 2004.

    c.    Plaintiff's performance has been satisfactory at all relevant times prior to the onset of defendants' discriminatory and retaliatory actions.

d. For example, defendant designated plaintiff as an expert witness in defense of at least two medical malpractice claims against defendants.

e. As well, plaintiff's performance evaluations had been satisfactory until the onset of defendants' discriminatory and retaliatory actions.

f. Moreover, at the time of her termination, plaintiff's salary was approximately $80,000 a year and she had earned a vested pension with defendant that was worth more than $200,000.

g. Prior to 2002, defendant's management consisted of four women who were not Caucasian.

h. Thereafter, however, the racial composition of defendant's management changed dramatically, such that, by the time of plaintiff's discriminatory and retaliatory termination, defendant's management was primarily Caucasian. Not surprisingly, the new management had significant difficulties with other staff members, especially those who were older, or who were of African descent.

i. From 2002 until her termination in March 2004, plaintiff was subjected, to the first time, to a barrage of hostilities which stemmed directly from the new management's racial, age-based, and retaliatory animus towards plaintiff and towards others.

j. Moreover, on more that one occasion, defendants falsely accused plaintiff of insubordination, of being defensive and of being

3

      difficult, because she reasonably opposed defendants' discriminatory behavior. On information and belief, such hostility was only visited upon other African-American women, and Persons who close in age to plaintiff.

k. When plaintiff intimated that she was being mistreated because of her race and/or age, plaintiff was subjected to entirely unfair disciplinary memoranda purporting to criticize her performance.

l. In May 2002, plaintiff received a disciplinary memorandum from the new management concerning her alleged "absenteeism" surrounding her reasonable attempts to care for her daughter who suffered complications during a difficult pregnancy. On information and belief, defendants typically accommodated the requests of non-black and younger employees to take time off for serious medical conditions relating to their family members. The same courtesies were not extended to plaintiff, in part, due to her age and her race. On information and belief, such hostility was primarily visited upon other African-American women, and persons who close in age to plaintiff.

m. In August 2002, defendant falsely and in bad faith, accused plaintiff of refusing to treat a patient. Little or no attempts were made to solicit plaintiff's reasonable explanations before defendants made said false allegations. On information and belief, defendant typically extended such courtesies, pursuant to its own

    practices and policies, to other similarly-situated employees who were neither black, nor as old as plaintiff. In fact, such false allegations against plaintiff were unprecedented until the defendant's newer, younger and comparatively lighter management took over. On information and belief, such hostility was primarily visited upon other African-American women, and persons who close in age to plaintiff.

n.     In September 2002, plaintiff reasonably complained to defendant's human resources department and to others, about a pattern of mistreatment against her and others. In so complaining, plaintiff was reasonably opposing practices which she felt were discriminatory due, in part, to her race, her age and reasonable complaints that she had made concerning defendant's departures from the standard duty of medical care owed to its own patients. Plaintiff also complained that similarly-situated Caucasian employees frequently violated defendant's policies, yet they were rarely, if ever, disciplined for such lapses.

o.     Moreover, plaintiff reasonably complained to management, on numerous occasions, about defendants' departing from the standard duty of medical care owed to its own patients. Predictably, and in response, management cautioned plaintiff for expressing her viewpoints in an "a hostile and aggressive tone."

p.  In September 2003, plaintiff was accused of failing to follow up on an abnormal pap smear.

q.  Later still, plaintiff was falsely accused of not informing a patient that she had testified positive for a STD, and for allegedly not scheduling a follow-up visit.  On information and belief, defendant was well aware that the patient had been so informed and that it was not plaintiff's responsibility to schedule a follow up visits. In fact, plaintiff specifically noted that the failure of the responsible party to schedule a follow up was a departure from the standard duty of medical care that defendants owed to its own patients.

r.  Consistent with new management's apparent plan to "clean shop," plaintiff was given a negative performance evaluation which claimed, amongst other things, that plaintiff had difficulty "showing respect" to others. On information and belief, this comment reflected retaliatory animus towards plaintiff because she reasonably opposed defendant's discriminatory behavior and its departures from the standard duty of medical case owed to its own patients.

s.  On March 9, 2004 management, though its agents, discovered that plaintiff was keeping a detailed diary about all of the incidents of harassment against her, defendant's departures from the standard duty of medical care owed to its own patients, and retaliation

6

     against her because she reasonably opposed and/or complained about this behavior.

  t. Within three days of this discovery, plaintiff was suspended.

  u. On March 12, 2004, plaintiff informed defendant that she intended to hire an attorney to vindicate her employment rights.

  v. On March 26, 2004 defendant summarily terminated plaintiff's employment without any notice or opportunity to be heard, in contravention of defendant's own policies.

  w. On information and belief, defendant summarily terminated plaintiff because of her race, her age, her opposition to discrimination, and her attempts to complain about, and to expose defendant's departures from the standard duty of medical care owed to its own patients.

6. As a further proximate result of defendant's illegal acts towards plaintiff, plaintiff will suffer a loss of earnings, bonuses and other employment benefits.

7. As a further proximate result of defendant's illegal actions towards plaintiff, plaintiff has suffered impairment and damage to plaintiff's good name and reputation.

8. As a further proximate result of defendant's illegal actions towards plaintiff, plaintiff has suffered mental anguish and emotional injury.

9. As a further proximate result of defendant's illegal actions towards plaintiff, plaintiff has been unable to find comparable employment with comparable pay, despite her best efforts to do so.

10. Individual defendants' illegal actions were willful, outrageous and were malicious, and were intended to injure plaintiff, and were done with reckless indifference to plaintiff's protected rights, entitling plaintiff to damages.

V. CAUSES OF ACTION

FIRST CAUSE OF ACTION

11. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

12. By discriminating against plaintiff on account of her age and in retaliation for her opposition to such discrimination, defendant violated 29 U.S.C. Section 621 *et seq*. and Section 296 of the New York Human Rights Law.

SECOND CAUSE OF ACTION

13. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

14. By discriminating against plaintiff on account of her race and in retaliation for her opposition to such discrimination, defendant violated 42 U.S.C. Sections 2000(e) and 1981, and Section 296 of the New York Stare Human Rights Law.

THIRD CAUSE OF ACTION

15. Plaintiff hereby repeats and realleges each allegation contained in each numbered paragraph above.

16. By retaliating against plaintiff because he reasonably complained about departures from the expected standard of medical care owed to patients, defendants violated Section 741 of the New York Labor Law.

VI.     PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant to her judgment containing the following relief:

a. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury,

b. An award of punitive and/or liquidated damages to be determined at the time of trial as against any individual defendants;

c. An award of reasonable attorney fees and the costs of this action and,

d. Such other and further relief as this Court may deem just and proper; and

e. Reinstatement or any other equitable relief available, including an injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
June 15, 2005

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.

By_____/s/_____
Ambrose W. Wotorson (AWW—2412)
26 Court Street
Suite 1811
Brooklyn, New York 11242

718-797-4861