```
                                            USDC SDNY
                                            DOCUMENT
UNITED STATES DISTRICT COURT                ELECT:    CALLY FILED
SOUTHERN DISTRICT OF NEW YORK               DOC #
                                            DATE FILED:  9/29/09
----------------------------------X
                                  :
LURADINE TIMBERLAKE,              :          05 Civ. 5616 (LAP)
                                  :
               Plaintiff,         :
                                  :          MEMORANDUM
      v.                          :          and ORDER
                                  :
NEW YORK PRESBYTERIAN HOSPITAL,   :
                                  :
               Defendant.         :
                                  :
----------------------------------X
```

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff Luradine Timberlake brings this action

against The New York and Presbyterian Hospital (the

"Hospital")[1] alleging illegal employment discrimination and

retaliation in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000e et seq.; 42 U.S.C. § 1981 ("Section 1981"); New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296;

and N.Y. Labor Law § 741 ("Section 741").  The Hospital now

moves for summary judgment on all claims.  For the reasons

enumerated below, the motion is GRANTED.

---

[1]  The Complaint incorrectly identifies Defendant as "New
York Presbyterian Hospital." (Affirmation of Counsel Steven
M. Post in Support of Defendant's Motion for Summary
Judgment, sworn to September 9, 2008, ("Post Aff."), ¶ 1).

I.   BACKGROUND

   A.   Plaintiff's Employment

   Unless otherwise indicated, the following facts are undisputed.  Plaintiff is a 60 year-old African-American woman. (Plaintiff's 56.1 Statement of Material Facts in Dispute, ("Pl. 56.1 Stmt."), ¶ 1.)  The Hospital hired her on June 12, 1972 as a staff nurse. (Id. at ¶ 2; Post Aff., Ex. 13, Deposition of Luradine Timberlake, taken February 27, 2006, ("Timberlake Feb. Dep."), 13:12-13:19.)  From 1974 to her termination in 2004, she worked in the Hospital's ambulatory women's health practice. (Pl. 56.1 Stmt. ¶¶ 3, 34; Timberlake Feb. Dep. 20:6-21:6.)

   The Practice Manager and her superior, the Director of Nursing, supervised Plaintiff. (Pl. 56.1 Stmt. ¶ 4; Timberlake Feb. Dep. 17:7-18:23.)  Ellen Hawa, a Caucasian woman, served as the Practice Manager in 2002, and Yvonne Phipps, an African-American woman in her fifties, served as the Practice Manager from 2002 until 2003. (Pl. 56.1 Stmt. ¶¶ 6, 11; Timberlake Feb. Dep. 28:4-28:13, 29:22-29:24, 31:13-31:14.)  Then, Patricia Deely, a Caucasian woman, served as Acting Practice Manager in the summer and fall of 2003. (Pl. 56.1 Stmt. ¶ 7; Timberlake Feb. Dep. 174:6-174:21.)  After September 2003, Denise Strand, a Caucasian woman, worked as the Practice Manager. (Pl. 56.1 Stmt. ¶ 8;

2

Timberlake Feb. Dep. 27:22-27:24.)

Beryl Earle, an African-American woman in her fifties, served as Director of Nursing from 2002 until mid-2003. (Pl. 56.1 Stmt. ¶¶ 9, 11; Timberlake Feb. Dep. 30:8-30:25.) Thereafter, Gayle Kolt, a Caucasian woman in her late fifties, served as Director of Nursing. (Pl. 56.1 Stmt. ¶¶ 10-11; Timberlake Feb. Dep. 30:5-31:9.)

Plaintiff was one of three full-time staff nurses in the ambulatory women's health practice. (Pl. 56.1 Stmt. ¶ 12; Timberlake Feb. Dep. 26:19-27:18.) One of her colleagues, Eun Sook Cha, was a Korean woman older than Plaintiff. (Pl. 56.1 Stmt. ¶¶ 13, 16; Timberlake Feb. Dep. 26:25-27:6, 29:11-29:13, 31:23-31:24.) Her other colleague, Emma Doctor, was an African-American woman older than Plaintiff. (Pl. 56.1 Stmt. ¶¶ 14, 16; Timberlake Feb. Dep. 26:22-27:18, 32:3-32:10.)

Norma Robinson, an African-American woman a few years younger than Plaintiff, replaced Doctor after her retirement. (Pl. 56.1 Stmt. ¶¶ 15, 16.)

B. Plaintiff's Work Performance

The Hospital issued Plaintiff numerous warnings about her insubordination and deficient work performance. In March 2003, Earle issued a written warning to Plaintiff concerning her "inappropriate behavior" during a staff

3

meeting where she "became increasingly hostile, very
aggressive tone [sic], and walked out of the meeting before
the meeting was ended." (Pl. 56.1 Stmt. ¶¶ 17-18.)   In
September 2003, Deely issued a written warning to Plaintiff
for failing to "follow unit based procedure regarding the
tracking and communicating of lab results." (Id. at ¶ 21.)
The next month, Strand issued an oral warning to Plaintiff
for inappropriate behavior directed towards one of the
Clinic's physicians. (Id. at ¶ 22.)   In December 2003,
Strand issued another written warning to Plaintiff for
failing to follow the unit based procedure regarding the
tracking and communicating of lab results. (Id. at ¶ 23.)

In February 2004, the Hospital issued Plaintiff her
annual evaluation for the preceding year. (Id. at ¶ 24.)
She received an overall rating of "Needs Improvement" and
received poor marks for interpersonal relationships and
communications with coworkers. (Id.)   The Hospital also
issued Plaintiff a Work Improvement Plan directing her to
improve patient follow-up, reporting of patients' test
results, and documentation of patient encounters and
conversations with other healthcare providers. (Id. at
¶ 26; Post Aff., Ex. 6, Work Improvement Plan from Denise
Strand to Plaintiff, dated February 10, 2004.)   The Work
Improvement Plan identified these deficiencies as

4

"previously discussed during various counseling sessions."
(Post Aff., Ex. 6, Work Improvement Plan from Denise Strand
to Plaintiff, dated February 10, 2004.)  Moreover, the Work
Improvement Plan indicated that it constituted a "warning"
in accordance with the Hospital's disciplinary policy.
(Id.)

    Plaintiff admits that she did not disagree with the
need for the Work Improvement Plan and that she had planned
to "follow through" with the requisite corrections to her
work performance. (Post Aff., Ex. 14, Deposition of
Luradine Timberlake, taken March 22, 2006, ("Timberlake
Mar. Dep."), 110:18-110:22.)  However, less than one month
after the Hospital issued the Work Improvement Plan, the
Hospital suspended Plaintiff after she violated Hospital
policy by dispensing medication without a physician's
order. (Pl. 56.1 Stmt. ¶ 27.)

    Plaintiff argues that several days prior to her
suspension, agents of the Hospital discovered that she
maintained a log of discriminatory and retaliatory
incidents. (Id. at ¶ 29.)  She further asserts that during
the meeting concerning her suspension, she informed the
Hospital that she was retaining legal counsel to combat
what she believed was discrimination and retaliation; the
Hospital denies this happened. (Id. at ¶ 28.)

While Plaintiff was serving her suspension, Hospital staff discovered unfiled patient laboratory reports and other treatment-related documents under her desk. (Id. at ¶ 29.)  Approximately 30 of the 495 laboratory reports contained abnormal results requiring patient notification and physical follow-up. (Id. at ¶ 30.)  Plaintiff disputes that the documents she held in her office were originals, and Plaintiff argues that she lacked an obligation to file them. (Id. at ¶¶ 29-33.)  However, it is undisputed that when Plaintiff returned from her suspension, she refused to provide the Hospital with an explanation for the documents found under her desk. (Id. at ¶¶ 31-33.)  The Hospital subsequently terminated Plaintiff's employment. (Id. at ¶ 34.)

Plaintiff initiated this action on June 15, 2005—within 90 days after she received a right to sue letter from the Equal Employment Opportunity Commission.

II.  DISCUSSION

A.  Summary Judgment Standard

The Hospital is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. Proc. 56(c)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Id. at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Overton v. New York State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004).

To assess whether summary judgment is proper, the Court construes the evidence in the light most favorable to the non-moving party. Lucente v. IBM Corp., 310 F.3d 243, 253 (2d Cir. 2002). As movant, the Hospital bears the initial burden of providing the basis for the motion and identifying the evidentiary materials, if any, supporting its position. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). Plaintiff must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ.

P. 56(e)).  Mere speculation and conjecture will not

suffice. See Niagara Mohawk Power Corp. v. Jones Chem.

Inc., 315 F.3d 171, 175 (2d Cir. 2002).  Accordingly,

"unsupported allegations do not create a material issue of

fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d

Cir. 2000).

> B.   Analysis

>> 1. Direct Discrimination

The Hospital is entitled to summary judgment on

Plaintiff's direct age and race discrimination claims under

Title VII, the ADEA, and the NYSHRL because she has not

established a prima facie case of discrimination and, even

if she had, the Hospital has introduced non-discriminatory

reasons for the adverse employment actions which Plaintiff

has not shown to be pretextual.[2]  To establish a prima facie

case of discrimination, Plaintiff must demonstrate that (i)

she is a member of a protected class, (ii) she was

qualified for her position, (iii) she suffered an adverse

employment action, and (iv) the circumstances of the

adverse action "give rise to an inference of

---

[2] As the state and federal discrimination claims are
analytically similar, the Court will exercise supplemental
jurisdiction over Plaintiff's NYHRL claims. See Wanamaker
v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997);
infra note 4.

discrimination." Weinstock, 224 F.3d at 42.  Should she

succeed, the burden shifts to the Hospital to "to

articulate a legitimate, non-discriminatory reason for the

adverse action." Id.  If the Hospital satisfies this

burden, the Hospital is entitled to summary judgment unless

Plaintiff can demonstrate that the non-discriminatory

explanation is merely a pretext for discrimination.[3] Id.;

Ahmed v. N.Y.C. Health & Hosp. Corp., No. 08-2124, 2009 WL

1269579, at *1 (2d Cir. May 8, 2009) (affirming grant of

summary judgment in favor of defendant-employer, noting

"[t]he ultimate burden of persuasion is always on the

plaintiff, who must demonstrate that the employer's action

was prompted by an impermissible motive"); Marlo v. P&C

Food Mkts., 313 F.3d 758, 767 (2d Cir. 2002).

     Here, Plaintiff has failed to demonstrate

circumstances giving rise to an inference of

discrimination.  She offers nothing more than her own

personal belief and speculation that impermissible motives

---

[3] The burden-shifting framework for a Title VII direct
discrimination claim applies to claims under the ADEA,
Section 1981, and the NYSHRL. See Wellesley v. Debevoise &
Plimpton LLP, No. 08-1360, 2009 WL 3004102, at *1 (2d Cir.
Sept. 21, 2009) (applying framework to an ADEA claim);
Jenkins v. NYC Transit Auth., 201 Fed. Appx. 44, 45 (2d
Cir. 2006) (applying framework to a Section 1981 claim);
Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997)
(applying framework to a NYHRL claim).

prompted the Hospital's actions. She presents, and the record reveals, no evidence that the Hospital's treatment of her differed from that accorded to employees outside of protected classes, that the Hospital departed from its general policies when discharging her, or that employees outside of protected classes who acted similarly were not terminated. Plaintiff's speculation and conclusory statements of opinion are simply insufficient to defeat the Hospital's summary judgment motion. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Smith v. Am. Express Co., 853 F.2d 151, 154-55 (2d Cir. 1988).

Furthermore, assuming arguendo that Plaintiff had established a prima facie case, she has made no attempt to show that the Hospital's non-discriminatory reasons for taking disciplinary action against her were pretextual. To the contrary, rather than introducing facts to support her discrimination claims, Plaintiff has done exactly the opposite; she has admitted valid, non-discriminatory reasons for her termination. The record contains an uncontroverted picture of a problematic employment history replete with incidents of insubordination and defiance. For example, less than one month after receiving the Work Improvement Plan, a written warning Plaintiff agreed with, Plaintiff dispensed medication without a physician's order.

10

(Pl. 56.1 Stmt. ¶¶ 26-27.) While serving the ensuing
suspension, the Hospital discovered that Plaintiff
maintained patient-related Hospital records in a box under
her desk. (Id. at ¶¶ 29-33.) Regardless of whether the
documents were originals or photocopies, and even assuming
Plaintiff lacked any obligation to file the documents, her
refusal to account for her hoard of Hospital records
coupled with her prior incidents of deficient performance
undoubtedly justified her termination. See Abdu-Brisson v.
Delta Air Lines, Inc., 239 F.3d 456, 470 (2d Cir. 2001);
Ahmed v. N.Y.C. Health & Hosp. Corp., No. 06-6685, 2008 WL
918830, at *7 (S.D.N.Y. Mar. 31, 2008), aff'd, No. 08-2124,
2009 WL 1269579, at *1 (2d Cir. May 8, 2009); O'Day v.
McDonnell Douglas Helicopter Co., 79 F.3d 756, 722 (9th
Cir. 1996) (determining that employee's unauthorized taking
of employer's documents—even if gathered to preserve
evidence for a discrimination suit—justified employee's
discharge). Accordingly, Plaintiff's direct discrimination
claims fail as a matter of law.

### 2. Retaliation for Opposition to Age and Race
### Discrimination

To establish a prima facie case of retaliation,
Plaintiff must show that (i) she engaged in a protected
activity, (ii) the Hospital knew of the activity, (iii) she

11

suffered an adverse employment action, and (iv) a causal connection exists between the protected activity and the adverse employment action. See Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008) (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996) (citing Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)).  If Plaintiff makes a prima facie case of retaliation, the burden shifts to the Hospital to provide a legitimate, nondiscriminatory reason for its actions, which she must then show to be pretextual. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

Plaintiff's retaliation claims fail as a matter of law.  When asked whether she had ever made any complaint to the Hospital of being treated differently because of her age, Plaintiff did not answer affirmatively.  Instead, she pointed to a single reference she wrote in a March 2003 memo that she was a "senior nurse on this unit (30+ years)" and a complaint to Strand about a coworker looking up Plaintiff's nursing license on the computer. (Timberlake Feb. Dep. 103:8-104:8; 124:15-13.)  These could hardly be construed as discrimination complaints, and no reasonable

trier of fact would infer that the Hospital knew or should
have known from these references that Plaintiff was
complaining about age discrimination. See McDowell v. T-
Mobile USA, Inc., 307 Fed. Appx. 531, 534 (2d Cir. 2009);
Wimes v. Health, 157 Fed. Appx. 327, 328 (2d Cir. 2005);
Galderi-Ambrosina v. Nat'l Realty & Dev. Corp., 136 F.3d
276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement
that the employer have been aware of the protected activity
is the requirement that it understood, or could reasonably
have understood, that the plaintiff's opposition was
directed at conduct prohibited by [the statute].").

    Plaintiff testified that the only written complaint
she made to the Hospital concerning purported racial
discrimination was on an anonymous survey. (Timberlake Feb.
Dep. 28:4-28:13.)  As Plaintiff conducted this opposition
anonymously, the Hospital could not have known that
Plaintiff herself engaged in the protected activity.

    Plaintiff's strongest potential case for retaliation
arises in connection with her statement that she intended
to hire an attorney to vindicate what she believed to be
discriminatory treatment and the Hospital's discovery of a
log chronicling such treatment.  Assuming without deciding
that this establishes a prima facie case of retaliation,
the Hospital is still entitled to summary judgment with

respect to this and everything else Plaintiff alleges.  As
discussed in the foregoing analysis of Plaintiff's direct
discrimination claims, she presented no evidence from which
to infer that the Hospital's reasons for reprimanding her
and ultimately terminating her employment were pretext.
Consequently, any retaliation claim fails as a matter of
law.

### 3. Retaliation for Objecting to Improper Quality
### of Patient Care

Plaintiff also alleges a violation of Section 741,
which prohibits retaliation against healthcare providers
that disclose or object to improper quality of patient
care.[4]  Plaintiff asserts that she complained about the
Hospital's policy of rescheduling patients who arrive more
than thirty minutes late to their appointments and other
"departures from the standard duty of medical care owed to
. . . patients." (Complaint ¶ 5.)

---

[4] This court will exercise supplemental jurisdiction over
Plaintiff's state claims.  In making this determination,
the Court has assessed judicial economy, convenience,
fairness, and comity.  The parties have taken numerous
depositions, and the Court has substantial familiarity with
the merits of the case through many hours devoted to
reviewing the parties' memoranda, the attached exhibits,
and the record.  Additionally, the Hospital's defense of
the federal claims provides a defense to all of the state
claims based upon well-settled principles of state law. See
Dellefave v. Access Temporaries, Inc., 37 Fed. Appx. 23, 26
(2d Cir. 2002); Mauro v. S. New England Telecomm., Inc.,
208 F.3d 384, 388 (2d Cir. 2000).

14

For Section 741 to apply, the improper quality of patient care must concern a "practice, procedure, action or failure to act of an employer which violates any law, rule, regulation or declaratory ruling adopted pursuant to law" and the violation must relate to "matters which may present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient." N.Y. Labor Law § 741(1)(d).

Plaintiff's claim fails because she has not introduced any evidence showing that Section 741 applies. First, she has not identified any law, rule, regulation or declaratory ruling she reasonably believed the Hospital violated. See Deshpande v. TJH Med. Servs., P.C., 861 N.Y.S.2d 697, 699-700 (App. Div. 2d Dep't 2008). Second, none of the purported departures from the standard duty of care were shown to present the requisite degree of substantial or significant danger to fall within the ambit of Section 741. See United States ex rel. Smith v. N.Y. Presbyterian Hosp., No. 06-4056, 2007 WL 2142312, at *14 (S.D.N.Y. July 18, 2007).

Even if Section 741 applied, the Hospital has offered ample evidence indicating that the decisions to reprimand Plaintiff and ultimately terminate her employment were based on her insubordination and deficient performance.

Since Section 741 provides that "it shall be a defense that the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section," N.Y. Labor Law § 741(5), Plaintiff's Section 741 claim fails.

III. CONCLUSION

For the foregoing reasons, the Hospital's motion for summary judgment [dkt. no. 19] is GRANTED.

The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED

Dated:    New York, New York
          September  29 , 2009

                              LORETTA A. PRESKA, Chief U.S.D.J.